Rosemary M. Rivas (#209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Lionel Z. Glancy (#134180)
lglancy@glancylaw.com
Marc L. Godino (#182689)
mgodino@glancylaw.com
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Eric Peterson*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC PETERSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA FOODS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:13-cv-3158-L-NLS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Date: May 5, 2014<br>Time: 10:30 a.m.<br>Judge: Hon. M. James Lorenz<br>Ctrm: 5B<br><br>Complaint Filed: December 24, 2013 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................1

II. FACTUAL SUMMARY ..................................................................................3

III. ARGUMENT ....................................................................................................6

    A. Legal Standards on a Motion to Dismiss .........................................6

    B. Statutory Framework Concerning Plaintiff's "No MSG" Claims and Preemption............................................................................................8

    C. Plaintiff's "No MSG" Claims After November 19, 2012 Are Not Preempted ...........................................................................9

    D. Plaintiff's "No MSG" Claims Prior to November 19, 2012 Are Not Preempted .........................................................................11

IV. CONCLUSION...............................................................................................13

# TABLE OF AUTHORITIES

Cases

*Allen v. ConAgra Foods, Inc.*,
 Case No. 13-cv-01279-JST, 2013 WL 4737421 (N.D. Cal. Sept. 3, 2013) ...................... 7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................ 7

*Astiana v. Ben & Jerry's Homemade, Inc.*,
 Nos. C10-4387 PJH, C10-4937PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ...... 9

*Bassiri v. Xerox Corp.*,
 463 F.3d 927 (9th Cir. 2006) ......................................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................... 6, 7

*Berlex Labs. v. F.D.A.*,
 942 F. Supp. 19 (D.D.C. 1996) ...................................................................................... 11

*Eldridge v. Block*,
 832 F.2d 1132 (9th Cir. 1987) ..................................................................................... 7, 13

*F.C.C. v. Fox Television Stations, Inc.*,
 __U.S.__, 132 S. Ct. 2307 (2012) ............................................................................ 10, 11

*F.T.C. v. Procter & Gamble Co.*,
 (1967) 386 U.S. 568 , 87 S.Ct. 1224, 18 L.Ed.2d 303 .................................................... 2

*Kwikset Corp. v. Super. Ct.*,
 51 Cal. 4th 310 (2011) ............................................................................................... 2, 13

*Janney v. General Mills*,
 No. C 12-3919 PJH, 2013 WL 1962360 (N.D. Cal. May 10, 2013) ............................... 7

*Reid v. Johnson & Johnson*,
 Civil No. 11-cv-1310 L (BLM), 2012 WL 4108114 (S.D. Cal. Sept. 18, 2012) ........... 12

*Rush v. Nutrex Research, Inc.*,
 No. C 12-01060 LB, 2012 WL 2196144 (N.D. Cal. June 13, 2012) ...............................2

*Smith v. Cabot Creamery Co-op., Inc.*,
 12-4591 SC, 2013 WL 685114 (N.D. Cal. Feb. 25, 2013) ............................................11

*Vess v. Ciba–Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003)........................................................................................7

*Williams v. Gerber Prods., Co.*,
 552 F.3d 934 (9th Cir. 2008)..............................................................................1, 6, 7, 13

*Wilson v. Frito-Lay N. Am., Inc.*,
 961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................................................................9, 13

*Wilson v. Frito-Lay N. Am., Inc., No.*,
 No. 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) .......................8, 9, 10, 11

Statutes

21 U.S.C. § 301 ......................................................................................................................8
21 U.S.C. § 343 ......................................................................................................................8
21 U.S.C. § 343(a)(1)....................................................................................................6, 8, 13
21 U.S.C. § 343(q) ..............................................................................................................8, 9
21 U.S.C. § 343(r) ...............................................................................................................8, 9

Rules

Fed. R. Civ. P. 9(b) ................................................................................................................7
Fed. R. Civ. P. 8(a)(2)............................................................................................................6

Regulations

21 C.F.R. §101.22(h)(5)........................................................................................................11
21 C.F.R. §101.13(9)(3) .......................................................................................................12

Plaintiff Eric Peterson ("Plaintiff") hereby submits his opposition to the "Motion to Dismiss the Amended Class Action Complaint" (the "Motion") filed by defendant ConAgra Foods, Inc. ("ConAgra" or "Defendant").[1]

## I. INTRODUCTION

This is not a complicated case. "MSG" is widely known as monosodium glutamate, an ingredient that many consumers try to avoid due to the numerous reported health problems associated with its consumption. Plaintiff's ACAC alleges that Defendant advertises its "Mac & Cheese" pasta product as containing "No MSG" when in fact this statement is simply untrue. *See, e.g.,* Docket Entry #13.

This type of labeling gamesmanship has been squarely rejected by the Ninth Circuit. As the court aptly noted in *Williams v. Gerber Prods., Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008):

> The district court suggests that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified." *Williams*, 439 F. Supp. 2d at 1116. ***We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.*** The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. ***We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.*** Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams*, 552 F.3d at 940 (finding that district court erred in determining as a matter of law that packaging was not deceptive and noting that "[Defendant] makes no argument

---

[1] At all times, "¶" references are to Plaintiff's Amended Class Action Complaint ("ACAC") (Docket Entry #13), emphasis is added and citations are omitted unless otherwise indicated.

as to how compliance with certain FDA regulations would automatically shield it from liability under these California statutes[.]").

Furthermore, as the California Supreme Court stated in *Kwikset Corp., et al. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011):

> Simply stated: labels matter. ***The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.*** (*E.g.*, *F.T.C. v. Procter & Gamble Co.* (1967) 386 U.S. 568, 572, 87 S.Ct. 1224, 18 L.Ed.2d 303 [noting the central role of advertising and sales promotion in generating market share, where the competing products are functionally identical].) An entire body of law, trademark law (see, e.g., 15 U.S.C. § 1051 et seq. [Lanham Act]), exists to protect commercial and consumer interests in accurate label representations as to source, ***because consumers rely on the accuracy of those representations in making their buying decisions.***

*Id.* at 328.

In light of Defendant's misrepresentations to the consuming public, Plaintiff's ACAC includes causes of action for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, ("UCL"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, ("FAL"), the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, ("CLRA"), and for breach of California's express warranty law. ¶¶5, 25-62. Moreover, Plaintiff seeks damages, restitution, and injunctive relief in the form of an order requiring Defendant to (1) cease the unlawful marketing alleged herein; and (2) implement a corrective advertising campaign. *See* ¶5; ACAC, Prayer for Relief.

Importantly, ***Defendant makes no attempt to deny Plaintiff's allegations in its Motion***. Instead, rather than address Plaintiff's causes of action in the ACAC, Defendant engages in a singular attack on the pleadings. *See, e.g., Rush v. Nutrex Research, Inc.*, No. C 12–01060 LB, 2012 WL 2196144 (N.D. Cal. June 13, 2012) (denying motion to dismiss for failing to challenge all theories supporting plaintiff's

claims). In fact, in a misguided attempt to evade liability, Defendant's primary challenge to the ACAC is that Plaintiff's claims are somehow preempted by federal regulation. However, since neither Federal nor California law condones misleading consumers as ConAgra is doing in this case, Defendant's position is simply unfounded and its Motion should be denied in total.

## II. FACTUAL SUMMARY

Defendant owns Chef Boyardee, a brand of canned pasta products sold worldwide. Chef Boyardee food products are sold in cans or other packaging, and include foods such as macaroni & cheese, spaghetti, ravioli, lasagna, mini bites pasta, whole grain pasta, fun flavor pasta, pizza and sauces. These Chef Boyardee products are available in three sizes: a microwaveable sized bowl, a 15-oz can, and a 40-oz can. Chef Boyardee's "Mac & Cheese" pasta product is the consumer item at issue in this case. ¶1.

In an attempt to appeal to health conscious consumers, Defendant represents on its Mac & Cheese pasta product that it contains "No MSG" or "No MSG Added." ¶2. Monosodium glutamate, or "MSG," is the processed sodium salt of the common amino acid glutamic acid, an amino acid which is naturally present in many foods and food additives. ¶11. As a food additive, MSG was first introduced as a powder called "Accent." It was invented by Kikunae Ikeda, who went on to form the company Ajinomoto, the world's largest producer of MSG. MSG enhances the flavor of foods by making processed meats and frozen dinners taste fresher, smell better, and canned food products less tinny. ¶12. Furthermore, while MSG may have very little taste standing alone, when eaten it tricks people into thinking the food being consumed tastes better and has more protein. This is because glutamate has the taste of umami, one of the five basic tastes. ¶13.

It is well known that MSG is a controversial product because it has been reportedly linked to causing the following adverse effects: headaches; fatigue and disorientation; depression; flushing; sweating; facial pressure or tightness; numbness; tingling or burning in the face, neck and other areas; rapid, fluttering heartbeats; chest

3

pain or difficulty breathing; nausea; drowsiness and weakness. ¶¶2, 14. As a result of the foregoing, consumers have increasingly sought healthier packaged foods that do not contain MSG. According to the Institute of Food Technologists, in 2010 consumers increasingly cited to chemicals in food as the most important food safety issue, ***with 49% of consumers deliberately avoiding MSG.*** ¶15.

As such, manufacturers such as ConAgra are aware that almost half of the food consuming public tries to avoid products containing MSG because they perceive such items to be healthier alternatives to food containing MSG. ¶4. However, instead of removing MSG from their products in order to capture this market share, food manufacturers attempt to obscure the fact that MSG is in their products by using ingredients that contain MSG, but have names that consumers do not recognize as being associated with MSG. Manufacturers engage in this bait and switch charade because the U.S. Food and Drug Administration ("FDA") only requires manufacturers to list the ingredient "monosodium glutamate" on food labels. In other words, the FDA does not require product labels to specify that food naturally contains MSG. Nevertheless, foods containing ingredients with naturally occurring MSG cannot be labeled "No MSG" or any variation thereof. ¶¶3, 16.[2]

To further complicate matters, and unbeknownst to the average consumer, the following "ingredients" always contain MSG: autolyzed yeast, calcium caseinate, gelatin, glutamate, glutamic acid, hydrolyzed protein, monopotassium glutamate, monosodium glutamate, sodium caseinate, textured protein, yeast extract, yeast food, yeast nutrient, and umami. ¶18. In addition, the following "ingredients" contain or create MSG during processing: flavors and flavorings, seasonings, natural flavors and flavorings, natural pork flavoring, natural beef flavoring, natural chicken flavoring, soy sauce, soy protein isolate, soy protein, bouillon, stock, broth, malt extract, malt

---

[2] There are more than 40 ingredients containing glutamic acid. Whether an ingredient contains glutamic acid cannot be readily determined by consumers based on the names of the ingredients alone. Additionally, in some foods glutamic acid is formed during processing, which food labels do not disclose. ¶17.

flavoring, barley malt, enzyme modified ingredients, carrageenan, maltodextrin, pectin, enzymes, protease, corn starch, citric acid, powdered milk, and protein fortified and ultra-pasteurized ingredients. ¶19. Under the circumstances, it is reasonable for consumers to rely on food manufacturers' representations concerning the presence or absence of MSG in their products.

In this case, Defendant's Mac & Cheese product expressly states "No MSG" or "No MSG Added" on the front of the labels. The same labels also boast "Good Stuff Inside." *See* ¶¶3, 20-21 (including images). However, as Defendant is well aware (and does not deny in its Motion), its Mac & Cheese product is ***not*** MSG free because it contains several ingredients that have MSG. In fact, the Mac & Cheese product includes one or more ingredients that contain MSG, or create MSG during processing, rendering the "No MSG" or "No MSG Added" representations false. ¶¶3, 22 (listing processed ingredients in the product that contain MSG or are known to contain MSG). Furthermore, Defendant's Mac & Cheese product may also include other ingredients that contain MSG, or are known to contain MSG. ¶22.

On November 19, 2012, the FDA published a *Questions and Answers on Monosodium Glutamate (MSG)* segment on its website confirming that food products that contain added MSG or naturally occurring MSG cannot claim to contain "No MSG" or "No added MSG." This segment stated in pertinent part:

> **How can I know if there is MSG in my food?**
> FDA requires that foods containing added MSG list it in the ingredient panel on the packaging as monosodium glutamate. However, MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. ***However, foods with any ingredient that naturally contains MSG cannot claim "No MSG" or "No added MSG" on their packaging. MSG also cannot be listed as "spices and flavoring."***

http://www.fda.gov/food/ingredientspackaginglabeling/foodadditivesingredients/ucm328728.htm (the "MSG Statement").

Importantly, on its face the MSG Statement does not indicate *any* divergence from prior FDA policy on this issue. Further, it does not suggest that any prior ambiguity existed as to the ability or inability of manufacturers to use the terms "No MSG" or "No added MSG." In addition, unlike the FDA's *Guidance For Industry: Food Labeling Guide*, which Defendant admits has an express disclaimer stating that "[i]t does not create or confer any rights for or on any person and does not operate to bind FDA or the public," no such limitation is apparent concerning the FDA's MSG Statement. *See* Motion at 9. Rather, the MSG Statement is nothing more than an affirmation of FDA policy which tracks 21 U.S.C. § 343(a)(1) (noting that a food is misbranded if ***"its labeling is false or misleading in any particular[.]"***).

Yet despite the FDA's MSG Statement, and the fact that Defendant is well aware of consumer tendencies to seek out food labeled as having "No MSG," ConAgra takes advantage of its customers by misleading them into buying more of its products. Furthermore, while Defendant's Mac & Cheese product prominently displays "No MSG" or "No MSG Added" on the front of the package, in contrast, the ingredients in question are in fine print, in an inconspicuous location on the back of each label. The result is a scheme that is designed to mislead consumers and it does so quite effectively. ¶¶23-24.

### III. ARGUMENT

#### A. Legal Standards on a Motion to Dismiss

*Federal Rule of Civil Procedure* 8(a)(2) only requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." As such, a complaint should not be dismissed if it "give[s] the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, "all allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Williams*,

552 F.3d at 937. Moreover, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The "plausibility" standard is "not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is met when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (*citing Twombly*, 550 U.S. at 556). A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. A motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams*, 552 F.3d at 938. Moreover, "if there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Allen v. ConAgra Foods, Inc.*, Case No. 13-cv-01279-JST, 2013 WL 4737421, at *1-*2 (N.D. Cal. Sept. 3, 2013) (denying motion to dismiss where defendant sold and marketed Parkay Spray, a liquid butter substitute, as having "zero fat" and "zero calories," even though an eight-ounce, 226 gram bottle, contained 832 calories and 93 grams of fat, and despite serving size listed on product).

Under Rule 9(b), allegations only need to be "specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge." *Allen*, 2013 WL 4737421, at *3. Moreover, [a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Janney v. General Mills*, No. C 12-3919 PJH, 2013 WL 1962360, at *2 (N.D. Cal. May 10, 2013) *citing Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Finally, in the Ninth Circuit, leave to amend is freely given unless the complaint could not possibly be cured by the addition of other facts. *See Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) ("In exercising its discretion with regard to the

amendment of pleadings, 'a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities.'"). The ACAC easily satisfies these pleading standards.

### B. Statutory Framework Concerning Plaintiff's "No MSG" Claims and Preemption

Defendant's primary argument is that Plaintiff's "No MSG" claims are preempted because they are subject to FDA regulation. *See, e.g.,* Motion at 6-10. Specifically, Defendant refers to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343(r), *et seq.*, which establishes when a food is misbranded. Under 21 U.S.C. § 343(a)(1), a food is misbranded if ***"its labeling is false or misleading in any particular[.]"*** Among other things, Sections 343(q) and (r) regulate nutrient content claims that appear on food product labels. *See also Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *3, *9-*11 (N.D. Cal. Apr. 1, 2013) (hereinafter "*Wilson I*") (finding that plaintiff's state law claims concerning "No MSG" under the FDCA and NLEA were not preempted).

As the court noted in *Wilson I*:

> The FDCA, as amended by the NLEA, contains an express preemption provision, making clear that state laws imposing labeling requirements not identical to FDA mandates are preempted. *See* 21 U.S.C. § 343–1(a). ***"Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption."***
>
> ***
>
> ***The FDA itself appears to endorse this approach***, stating: "[I]f the State requirement does the same thing that the Federal law does...then it is effectively the same requirement as the Federal requirement...[T]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements on matters that are covered by Section 403A(a) of the Act." Final Rule, 60 Fed. Reg. 57076, 57120 (Nov. 13, 1995).

> "This means that plaintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in [21 U.S.C.] sections 343(r) and 343(q)." *Chacanaca,* 752 F.Supp.2d at 1119. "That is, if the statements at issue are nutrient content claims as contemplated by [21 U.S.C. § 343(r)], plaintiffs' deception claims may only go forward if they can show that the statements would also be 'misbranded' under the terms of [the FDCA and NLEA]." *Id.*

*Wilson I*, 2013 WL 1320468, at *7. *See also Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C10-4387 PJH, C10-4937PJH, 2011 WL 2111796, at *6-*10 (N.D. Cal. May 26, 2011) (denying motion to dismiss on grounds of preemption concerning plaintiff's "all natural" claims and stating: "Accordingly, defendants' preemption arguments must overcome the presumption against preemption because food labeling has been an area historically governed by state law.").

### C. Plaintiff's "No MSG" Claims After November 19, 2012 Are Not Preempted

In ruling on defendant's motion to dismiss plaintiffs' first amended complaint in *Wilson*, the court found that "Plaintiffs' state law claims about 'No MSG' statements [were] ***not*** preempted by federal law." *See Wilson I*, 2013 WL 1320468, at *9-*11. Thereafter, in ruling on defendant's motion to dismiss plaintiffs' second amended complaint, the court in *Wilson* confirmed as much for the time period after November 19, 2012, which is when the agency posted the MSG Statement. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1146-47 (N.D. Cal. 2013) ("*Wilson II*").

Nevertheless, and with virtually no supporting authority, Defendant incorrectly argues that the FDA's MSG Statement regarding use of the designation "No MSG" is not binding because the statement is informal and was not preceded by adequate notice to food manufacturers, including ConAgra. Motion at 7. However, as Defendant is aware, this argument was already considered and rejected by the court in *Wilson I*. As the court in *Wilson I* stated in pertinent part:

> "[W]here an agency interprets its own regulation, *even if through an informal process*, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer,* 519 U.S. at 461). The threshold question is whether the FDA's regulation on MSG and sources of MSG was ambiguous. *Id.* at 931. In *Bassiri,* the Ninth Circuit addressed whether a Department of Labor regulation was ambiguous and found that it was, because the term at issue there, "normal rate of compensation," "was left open to ... various interpretations" by the agency, the district court, and the parties. *Id.*
>
> In this case, the regulations have at least two possible interpretations. The regulations might suggest that since the FDA requires each type of ingredient to be listed with its proper name, a "No MSG" statement would not be misleading under the regulations because "MSG" means only "MSG" as an individually named ingredient. Alternatively, the regulations might be interpreted to forbid such a statement because they clearly acknowledge that MSG is just one type of free glutamate, meaning that "No MSG" would be misleading if the product contained another type of free glutamate other than MSG despite properly providing that ingredient's name.
>
> Under these circumstances, the FDA's statement on its website appears to be its own interpretation of an ambiguous regulatory scheme, and the Court finds that it owes the FDA's statement deference under *Auer,* since the ***FDA's clarifying statements do not appear "plainly erroneous or inconsistent with the regulation," nor are they based on impermissible constructions of the governing statute.*** *Auer,* 519 U.S. at 457, 461. ***The FDA made clear that even though MSG and ingredients that are sources of MSG must be labeled by their proper names, a manufacturer cannot say that a product containing an ingredient that is a source of MSG, like torula yeast, therefore contains "No MSG."***
>
> ***Plaintiffs' state law claims about "No MSG" statements are therefore not preempted by federal law.***

*Wilson I*, 2013 WL 1320468, at *10-*11.

Hence, Defendant's arguments in this regard are without merit. Moreover, ConAgra's reliance on *F.C.C. v. Fox Television Stations, Inc.*, __U.S.__, 132 S. Ct. 2307 (2012) is misplaced because in that case, the Federal Communications Commission

("FCC") violated networks' due process rights by failing to give them fair notice that, *in contrast to prior policy*, a fleeting expletive or a brief shot of nudity could be actionably indecent. That is not the situation in the case at bar.

Furthermore, as discussed *infra*, the FDA's MSG Statement does not diverge from the agency's prior position concerning the use of "No MSG" labels. At most, the FDA's MSG Statement is a clarifying interpretation of its regulation of MSG, as set forth in 21 C.F.R. §101.22(h)(5). *See Wilson I*, 2013 WL 1320468, at *10; *Berlex Labs. Inc. v. F.D.A.*, 942 F. Supp. 19, 27 (D.D.C. 1996) (finding that the FDA's guidance document was interpretative and did not require notice since it was "not a reversal of course… [but] [i]t was a policy development with identifiable antecedents."); *Smith v. Cabot Creamery Co-op., Inc.*, 12-4591 SC, 2013 WL 685114, at *6 (N.D. Cal. Feb. 25, 2013) (finding that defendant correctly argued that the FDA's 2004 and 2009 "interpretations are entitled to deference, being statements from the FDA about its own regulations.").

### D. Plaintiff's "No MSG" Claims Prior to November 19, 2012 Are Not Preempted

To the extent that *Wilson II* held that the FDA's MSG Statement does not retroactively apply to claims predating the November 19, 2012 announcement, Plaintiff believes that this Court should hold otherwise. As plaintiffs in *Wilson II* correctly noted, the FDA certainly did not invoke a position concerning the use of "No MSG" labeling that directly contradicted a prior position on the same issue:

> In the April 1 Order, the Court found that Plaintiffs' claims based on Defendant's "No MSG" labels were not preempted by federal regulations. Apr. 1 Order at 19–20. ***The regulation in question was actually the FDA's interpretation of its own rules about MSG, made in a November 2012 announcement that the Court found warranted deference.*** *Id.* However, the Court noted that while the FDA's November 2012 regulatory statement was a binding interpretation of the FDA's own rules, the parties had not explained how (if at all) that interpretation could apply retroactively to Defendant's labels as they appeared during the Class Period, prior to the November 2012 statement.

\*\*\*

11

PLAINTIFF'S OPP. TO DEFENDANT'S MTD - Case No. 13-cv-3158-L-NLS

> ***Plaintiffs claim that the November 2012 statement was just an affirmation of an FDA policy that had been in place for decades***: in short, any ingredient that is a source of MSG as opposed to being MSG itself (like torula yeast) will bar a food product from being labeled "No MSG," even though that ingredient itself must be labeled by its common name in the product's ingredient box. *See* Opp'n at 21–24. So according to Plaintiffs, any Product labeled "No MSG" prior to November 2012 would still be actionably mislabeled if it contained an ingredient that was a source of MSG. *Id.* ***Plaintiffs point to several FDA warning letters, sent between 1990 and 1996, which all inform companies that their food products were mislabeled because the products contained ingredients that were sources of MSG.*** *See* Opp'n at 22–23 (citing Opp'n Exs. 4–5). ***Plaintiffs also cite an August 31, 1995 FDA Backgrounder that states "the FDA considers foods whose labels say 'No MSG' or 'No Added MSG' to be misleading if the food contains ingredients that are sources of free glutamates, such as hydrolyzed protein."*** Opp'n Ex. 15 ("1995 Backgrounder").

*Wilson II*, 961 F. Supp. 2d at 1146.[3]

Suffice it to say, Plaintiff agrees with the foregoing position articulated in *Wilson II*. Moreover, to the extent that the court in *Wilson* held that the FDA's position prior to the MSG Statement was somewhat "ambiguous," there does not appear to be any

---

[3] Defendant's reliance on *Reid v. Johnson & Johnson*, Civil No. 11-cv-1310 L (BLM), 2012 WL 4108114 (S.D. Cal. Sept. 18, 2012) is misplaced. *Reid* addressed plaintiff's complicated health claims concerning Benecol, a margarine-like, vegetable-oil-based spread sold in eight-ounce tubs with the following labels: "Proven to Reduce Cholesterol"; "No Trans Fat"; "No Trans Fatty Acids"; and "Each serving contains .85g of Plant Stanol Esters." While that case provides some statutory background concerning the FDA and the concept of preemption, it is so factually dissimilar from the case at bar that it provides virtually no practical guidance in this situation. For example, in that case this Court held that after reading that Benecol contains "Trans Fat 0g" in the nutrition facts panel and that it contains "partially hydrogenated soybean oil" in the list of ingredients pursuant to FDA requirements: "[I]t is not possible for the reasonable consumer to be deceived by Benecol's 'No Trans Fat' and 'No Trans Fatty Acids' labels." *Id.* at *4. Here, Defendant has not made a similar "reliance" argument and it is not possible for a consumer to easily determine whether or not Defendant's "Mac & Cheese" product contains MSG. Moreover, in discussing preemption, this Court found that plaintiff was attempting to distinguish "0g trans fat" or "0 grams trans fat," "which the FDA permits under 21 C.F.R. §101.13(9)(3), with Defendants' labeled Benecol's trans fat content, 'No Trans Fat' and 'No Trans Fatty Acids,' thereby avoiding express preemption. The Court does not agree. Making a distinction between 'No Trans Fat' and '0 grams trans fat' is unreasonable." *Id.* at 10. Once again, Plaintiff is not attempting to make such a distinction in this case which makes *Reid* factually dissimilar.

evidence that supports such a finding. On the contrary, the letters supplied by plaintiffs' in *Wilson*, together with their reference to the "1995 Backgrounder," suggests the exact opposite. *See* Plaintiff's Request for Judicial Notice and *Exhibits A-D* attached thereto. This especially makes sense since, as noted *supra*, 21 U.S.C. § 343(a)(1), provides that a food is misbranded if ***"its labeling is false or misleading in any particular,"*** which parallels California state law. *See Williams*, 552 F.3d at 939-40; *Kwikset*, 51 Cal. 4th at 328. Hence, the court's holding in *Wilson II* seems somewhat conclusory in this regard. Thus, under the circumstances, Defendant's Motion should be denied on grounds of preemption concerning the entire time period at issue.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety. However, should the Court find any deficiencies in the ACAC that warrant dismissal, Plaintiff respectfully requests leave to amend. *See Eldridge*, 832 F.2d at 1135.

DATED: April 21, 2014                    Respectfully submitted,

**GLANCY BINKOW & GOLDBERG LLP**

By: *s/ Marc L. Godino*
Lionel Z. Glancy
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com

**FINKELSTEIN THOMPSON LLP**
Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704
Email: rrivas@finkelsteinthompson.com

*Counsel for Plaintiff Eric Peterson*

**PROOF OF SERVICE BY ELECTRONIC POSTING
AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On April 21, 2014, I caused to be served the following document on each ECF-registered party listed on the attached service list in the Action by posting such document electronically to the ECF website of the United States District Court for the Southern District of California:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

And on any non-ECF registered party:

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 21, 2014, at Los Angeles, California.

*s/ Marc L. Godino*
Marc L. Godino

# Mailing Information for a Case 3:13-cv-03158-L-NLS O'Dea v. Conagra Foods, Inc.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrick E. Brookhouser , Jr**
  pbrookhouser@mcgrathnorth.com

- **David Robert Clark**
  Drclarklaw@att.net

- **Marc L. Godino**
  mgodino@glancylaw.com,info@glancylaw.com

- **Rosemary M. Rivas**
  rrivas@finkelsteinthompson.com,adang@finkelsteinthompson.com,arivas@finkelsteinthompson.com,dthompson@finkelstenthompson.com

- **Manuel F de la Cerra**
  manny@delacerralaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)