1

2

3

4

5

6

7

8

9

10 UNITED STATES DISTRICT COURT

11 SOUTHERN DISTRICT OF CALIFORNIA

12

13 ERIC PETERSON, on behalf of himself )     Case No. 13-cv-3158-L (NLS)
   and all others similarly situated,      )
14                                          )   **ORDER GRANTING IN PART AND**
                          Plaintiff,        )   **DENYING IN PART MOTION TO**
15                                          )   **DISMISS PLAINTIFF'S FIRST**
   v.                                       )   **AMENDED COMPLAINT [doc. #16]**
16                                          )
   CONAGRA FOODS, INC., a Delaware          )
17 corporation,                             )
                                            )
18                        Defendant.        )
                                            )
19 ─────────────────────────────────       )

20          This action arises from Plaintiff Eric Peterson's allegation that the "No MSG" or "No

21 MSG Added" representations made by Defendant ConAgra Foods, Inc. ("ConAgra") violated

22 the California Consumers Legal Remedies Act, the False Advertising Law, the California Unfair

23 Competition, and California's express warranty law. Defendant now moves to dismiss the claims

24 under Federal Rule of Civil Procedure 12(b)(6).

25          The Court found this motion suitable for determination on the papers submitted and

26 without oral argument. *See* CIV. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS**

27 **IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

28 / / /

13cv3158

# I.   BACKGROUND

On December 24, 2013, Plaintiff Brian O'Dea brought a class action against ConAgra. ConAgra filed a motion to dismiss on January 17, 2014. In response to ConAgra's motion to dismiss the original Complaint, the parties stipulated to leave for Plaintiff to file an Amended Complaint and the Court so ordered. (doc. #12)

On March 10, 2014, Plaintiff Eric Peterson, on behalf of himself and all others similarly situated, filed the First Amended Complaint ("FAC"). According to the FAC, Defendant ConAgra is a Delaware corporation that owns and operates American packaged food companies. (FAC ¶ 10.) It produces canned foods, frozen foods, and snacks distributed under many different brands. (*Id.*) The product at issue is Chef Boyardee Mac & Cheese, which expressly states "No MSG" or "No MSG Added" on the labels. (*Id.* ¶¶ 10, 20.) However, the product is alleged to contain one or more ingredients that contain MSG or create MSG during processing. (*Id.* ¶ 22.) Peterson is a resident and citizen of San Diego, California. (*Id.* ¶ 9.) Peterson purchased Chef Boyardee's Mac & Cheese product in Del Mar, California in or around June, 2013. (*Id.*) Peterson alleges that he relied on the representation that the product contained no MSG, and that he would not have bought the product had he known that it contained MSG. (*Id.*) The FAC asserts four causes of action: (1) violation of California Consumers Legal Remedies Act; (2) violation of the False Advertising Law; (3) violation of the California Unfair Competition Law; and (4) breach of express warranty under CAL. COM. CODE § 2313.

On March 31, 2014, ConAgra moved to dismiss the FAC, arguing that Peterson's claims are expressly preempted by federal law. On April 21, 2014, Peterson filed an opposition to the motion to dismiss, alleging that his claims are not preempted because the state laws effectively parallel the relevant sections of the federal law. On April 28, 2014, ConAgra filed a reply in further support of their motion to dismiss.

# II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court

13cv3158

1  must accept all allegations of material fact as true and construe them in light most favorable to

2  the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d

3  972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true.

4  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily

5  assume the truth of legal conclusions merely because they are cast in the form of factual

6  allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

7  (internal quotation marks omitted). In fact, the court does not need to accept any legal

8  conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

10  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

11  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

12  of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the

13  allegations in the complaint "must be enough to raise a right to relief above the speculative

14  level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

15  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S.

16  at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff

17  pleads factual content that allows the court to draw the reasonable inference that the defendant is

18  liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

19  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

20  *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory

21  or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749

22  F.2d 530, 534 (9th Cir. 1984).

23  **III.   DISCUSSION**

24        **A.   <u>Federal Preemption</u>**

25  ConAgra contends that Peterson's state law claims as to the "No MSG" statements are

26

27

28

13cv3158

1    expressly preempted by federal law.[1]

2          Federal law preempts state law when: (1) a congressional statute explicitly preempts state

3    law (express preemption); (2) federal law occupies a legislative field to an extent that it is

4    reasonable to conclude that Congress left no room for the state to regulate in that field (field

5    preemption); or (3) state law conflicts with federal law (conflicts preemption). *Chae v. SLM*

6    *Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). Field and conflicts preemptions are examples of

7    implied preemption; they give rise to an inference that Congress left no room for state regulation

8    or that state law actually conflicts with federal law. *Ting v. AT & T*, 319 F.3d 1126, 1136 (9th

9    Cir. 2003).

10         The Federal Food, Drug, and Cosmetic Act ("FDCA") vests the FDA with the authority

11   to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and

12   properly labeled." 21 U.S.C. § 393(b)(2)(A). Congress amended the FDCA in 1990, by enacting

13   the Nutrition Labeling and Education Act ("NLEA"). 21 U.S.C. § 343-1. The NLEA was

14   intended to "establish uniform national standards for the nutritional claims and the required

15   nutrient information displayed on food labels." 1990 U.S.C.C.A.N. 3336, 3342. The NLEA also

16   amended the FDCA by adding a preemption provision, codified at 21 U.S.C. § 343-1. This

17   provision expressly preempts state laws addressing certain subjects that are "not identical to"

18   various standards set forth by the FDCA, including the labeling requirements set forth in 21

19   U.S.C. § 343(k). 21 U.S.C. § 343-1(a) (3). Under FDA regulations, the term "not identical to . . .

20   means that the State requirement directly or indirectly imposes obligations or contains provisions

21   concerning the composition of labeling" that are "not imposed or contained in the applicable

22   provision[s]." 21 C.F.R. § 100.1(c)(4). Accordingly, "[w]here a requirement imposed by state

23   law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly

24   refused to find preemption." *Chacanaca v. Quaker Oats*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal.

25   2010) (internal citations omitted).

26   _____

27        [1] ConAgra does not allege that Peterson fails to sufficiently plead the state law claims;
     therefore, the Court will not analyze whether the factual allegations in the FAC have met the
28   *Twombly* standard.

13cv3158

1

**B.** **Federal Law Does Not Preempt Peterson's "No MSG" Claims for the Time**

2 **Period After November 19, 2012**

3     Peterson's state law claims may go forward only if he can show that the "No MSG"

4 statements would also be "misbranded" under the terms of the FDCA and NLEA. *See*

5 *Chacanaca*, 752 F. Supp. 2d at 1119. The FDA's regulation on MSG labeling provides that

6 "[a]ny monosodium glutamate used as an ingredient in food shall be declared by its common or

7 usual name 'monosodium glutamate.'" 21 C.F.R. § 101.22(h)(5). Sources of MSG, such as yeast

8 extract and hydrolyzed protein, must be labeled according to their specific common or usual

9 names. *See, e.g.*, *id.* §§ 101.22(h)(7) (protein hydrolysates), 184.1983 (baker's yeast extract).

10     On November 19, 2012, the FDA published a Questions and Answers section regarding

11 MSG on its website:

12     How can I know if there is MSG in my food?

13     FDA requires that foods containing added MSG list it in the ingredient panel
on the packaging as monosodium glutamate. However, MSG occurs

14 naturally in ingredients such as hydrolyzed vegetable protein, autolyzed
yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as

15 well as in tomatoes and cheeses. While FDA requires that these products be
listed on the ingredient panel, the agency does not require the label to also

16 specify that they naturally contain MSG. However, foods with any
ingredient that naturally contains MSG cannot claim "No MSG" or "No

17 added MSG" on their packaging. MSG also cannot be listed as "spices and
flavoring."

18

19 *Questions and Answers on Monosodium glutamate (MSG)*, http://www.fda.gov/food/

20 ingredientspackaginglabeling/foodadditivesingredients/ucm328728.htm.

21     ConAgra argues that FDA's 2012 Statement on MSG labeling is not binding because the

22 statement is informal and did not give food manufacturers fair notice. However, ConAgra fails to

23 provide any supporting authority. ConAgra's reliance on *F.C.C. v. Fox Television Stations*, 132

24 S. Ct. 2307 (2012) is misplaced. In *F.C.C.*, the court held that an isolated, ambiguous agency

25 statement did not fulfill the fair notice requirement when the government wanted to impose a

26 large fine on a television network. *Id.* at 2319. This case is different because the MSG Statement

27 is not ambiguous. On the contrary, it is a clarifying statement that interprets an ambiguous

28 regulation.

13cv3158

1    "[W]here an agency interprets its own regulation, even if through *an informal process*, its

2    interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or

3    inconsistent with the regulation.'" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006)

4    (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (emphasis added); *see also Hillsborough*

5    *Cnty. v. Automated Med. Labs.*, 471 U.S. 707, 718 (1984) ("[B]ecause agencies normally

6    address problems in a detailed manner and can speak through a variety of means, including

7    regulations, preambles, interpretative statements, and responses to comments, we can expect that

8    they will make their intentions clear if they intend for their regulations to be exclusive." ).

9        The threshold question is whether the FDA's regulation on MSG and sources of MSG

10   was ambiguous. A regulation is ambiguous if it is left open to various interpretations. *Bassiri*,

11   463 F.3d at 931. In this case, the regulation regarding MSG labeling has at least two possible

12   interpretations. *See Wilson v. Frito-Lay N. Am., Inc.*, 12-1586 SC, 2013 WL 1320468, at *10

13   (N.D. Cal. Apr. 1, 2013). The regulation might suggest that because the FDA requires each type

14   of ingredient to be listed with its proper name, a "No MSG" statement would not be misleading

15   because "MSG"only means an individually named ingredient. *See id.* Alternatively, the

16   regulation might be interpreted to prohibit such a statement because it clearly acknowledges that

17   MSG is just one type of free glutamate: "No MSG" would be misleading if the product

18   contained another type of free glutamate other than MSG despite properly labeling that

19   ingredient's name. *See id.*

20       Here, the FDA's MSG Statement on its website, even though in the form of Questions

21   and Answers, appears to be an interpretation of an ambiguous regulation. *See Bassiri*, 463 F.3d

22   at 931; *see also Smith v. Cabot Creamery Co-op., Inc.*, 12-4591 SC, 2013 WL 685114 at * 5

23   (N.D. Cal. Feb. 25, 2013) (finding clarifications of FDA regulations through a Q & A session at

24   a seminar entitled to deference). Because the MSG Statement does not appear "plainly erroneous

25   or inconsistent with the regulation," the Court finds it controlling under *Auer*. 519 U.S. at 461.

26   Thus, under FDA regulations, foods with any ingredient that naturally contain MSG cannot

27   claim "No MSG" or "No added MSG" on their packaging. The labeling requirement imposed by

28   state law mirrors the FDA regulations after November 19, 2012; therefore, federal law does not

13cv3158

preempt Peterson's state law claims about "No MSG" representation for the time period after November 19, 2012.

In light of the foregoing, ConAgra's motion to dismiss Peterson's state law claims after November 19, 2012 is DENIED.

**C.    Federal Law Preempts Peterson's "No MSG" Claims for the Time Period Before November 19, 2012**

In his opposition to the motion to dismiss, Peterson contends that his "No MSG" claims prior to November 19, 2012 are not preempted because the MSG Statement was just an affirmation of an FDA policy that had been in place for decades. The Court disagrees.

As previously discussed, the FDA's November 2012 Statement regarding MSG clarified an ambiguous regulation. The Ninth Circuit held that retroactive application of such a regulatory clarification contravened due process. *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 770 (9th Cir. 2008). To hold that ConAgra should have been complying with a regulation that was not explicitly clarified until November 19, 2012 would violate due process because ConAgra was not on fair notice. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013). Because the labeling requirement imposed by state law is not identical to the FDA regulations before November 19, 2012, federal law preempts Peterson's "No MSG" claims before Novermber 19, 2012. Therefore, Peterson's state law claims based on ConAgra's "No MSG" labels predating the November 19, 2012 clarification are DISMISSED WITH PREJUDICE.

**IV.    CONCLUSION & ORDER**

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss as set forth above.

**IT IS SO ORDERED.**

DATED: July 29, 2014

M. James Lorenz
United States District Court Judge

/ / /

7

13cv3158

/ / /

COPY TO:

HON. NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

13cv3158